UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIAN ROBINSON,

     Petitioner,

v.

DUNCAN MACLAREN,

     Respondent.

Case No. 17-12612
Honorable Laurie J. Michelson

---

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

---

In the fall of 2009, two men set fire to a car; the fire spread to the houses on either side of the vehicle. The car belonged to the ex-girlfriend of Dorian Robinson's brother. Robinson says that at the time of the arson, he was miles away, with the mother of his children and her friend. The authorities thought otherwise, and Robinson and his brother, Idriss Robinson, were charged with arson of a dwelling house (among other crimes). The two were convicted in state court. Dorian Robinson appealed without success and then sought post-conviction relief from the state trial court, also without success. Robinson now comes to federal court, seeking a writ of habeas corpus. He raises six claims, but they either lack merit or, to the extent that they have some merit, the deference owed to the state courts' decisions under 28 U.S.C. § 2254 prevents relief. So Robinson's petition will be denied.

### I.

### A.

The Court accepts the facts as found by the Michigan Court of Appeals unless the factual findings are unreasonable, 28 U.S.C. § 2254(d)(2), or are rebutted by clear and convincing evidence, § 2254(e)(1).

On November 1, 2009, Robinson's brother, Idriss, brought his daughter over to Latyra Matthews' house to have her hair braided. *People v. Robinson*, No. 301605, 2012 WL 1109049, at *1 (Mich. Ct. App. Apr. 3, 2012). When Idriss arrived, Antoinette Roseborough, who was at Matthews' house, called Idriss a "boy" and stated, "[t]his n*** is here." *Id.* This provoked an argument between Idriss and Roseborough. *Id.* Matthews recalled, "[Roseborough] told me that [Idriss] had smacked her and proceeded to smack her more than one time because of an argument they were having." (PageID.542–543.)[1]

Two days later, on November 3, 2009, two men lit a car on fire. Officer Jennifer Miles arrived on scene at about 7:00 p.m. *Robinson*, 2012 WL 1109049, at *1. "When she arrived, she saw a car fully engulfed in flames in a driveway between two houses." *Id.* "The flames from the car reached the house on the right, and began melting the siding . . . . [T]he fire damaged the vinyl siding on the second story and a second-story window." *Id.* As for the house on the left, "[t]he flames also reached the upper windows . . . and melted part of a window, an overhang and part of the vinyl siding." *Id.*

A boy and a girl lived in the house on the right. The boy, NN, was in fourth grade at the time of the fire; and the girl, MN, was in the sixth grade at that time. *See Robinson*, 2012 WL 1109049, at *2 (providing fifth and seventh grades at the time of trial, a year later). Both NN and MN told officer Miles that they saw two men start the fire. *Id.* They further stated that one of the men was an ex-boyfriend of a girl from the house next door and one of them indicated that they thought the men were brothers or family members. *Id.* The day after the fire, Miles showed NN and MN two photo arrays. *Id.* One array included a picture of Robinson; the other included a

---

[1] Unless indicated otherwise, all record citations are to the Rule 5 materials, ECF No. 9.

picture of his brother, Idriss. *Id.* NN identified Idriss, but MN did not. *Id.* Neither MN nor NN identified Robinson as one of the men who started the fire. *Id.*

Arthur Schrah, a fire inspector, was one of the authorities who investigated the fire. As part of his investigation, he spoke with Mathews. (PageID.595–596.) According to the portion of Schrah's report capturing his conversation with Mathews, Robinson had told Mathews that he did not want his brother to go back to prison, that he did not want the police to be involved, and that he knew where she lived. (PageID.596.) Schrah's report also stated that Robinson had offered Roseborough $100 to not press charges. (PageID.596.)

Both Idriss and Robinson were charged with arson of a dwelling house, among other crimes. They went to trial in state court together.

Matthews testified at Idriss' and Robinson's trial. Contrary to Schrah's report, Matthews denied telling Schrah that Robinson had told her that he did not want his brother to go back to prison. (PageID.565–566.) Mathews also denied telling Schrah that Robinson had threatened that "he knows where [I] live." (PageID.566.) And Matthews denied telling Schrah that she feared for her safety. (PageID.552.) Matthews admitted, however, that Roseborough had told her (Matthews) that Robinson had offered Roseborough $100 to not press charges. (PageID.566.)

Schrah testified contrary to Matthews. He stated, "[Matthews] told me that she was still very afraid for her safety . . . that she had received threats." (PageID.593.) Schrah told the jury that Matthews had received a phone call from Robinson and that on the call, Robinson indicated that he did not want his brother to get in trouble. (PageID.593.) Schrah continued, "Shortly after that, [Robinson] did show up over at [Matthews'] house, . . . at which time he, actually, offered a cash payment so there wouldn't be any testifying or any charges being sought in reference to the earlier incident." (*Id.*) Schrah read some of Matthews' statements about Robinson's threats or

bribes from his report, but the jury was instructed to not treat those statements as substantive evidence and only to use them in assessing Matthews' credibility. (PageID.594–595, 711.)

Both NN and MN testified at Idriss' and Robinson's trial. Among the people in the courtroom, NN picked out Idriss as one of the men who started the fire. (PageID.440.) NN did not identify anyone in the courtroom as the second person involved. (PageID.440.) But NN did say that he learned from his sister that the second person was Idriss' brother. (PageID.439–440.) As for MN, she too identified Idriss in the courtroom. But—initially—MN could not identify Robinson. (PageID.414–415.) In fact, MN testified, "I don't remember his face." (PageID.416.) After she left the stand, however, MN believed that she recognized Robinson and then had a brief conversation with an assistant prosecutor. (PageID.458–464.) (What was said is critical to one of Robinson's claims, and so the Court sets out the conversation in detail when addressing that claim.) Over Robinson's counsel's objection, MN was recalled to the stand and identified Robinson as one of the two men who started the fire. (PageID.474–475.) She explained that his face was blocked by a computer screen during her initial testimony.

Upon considering the evidence, including this testimony, a jury convicted Robinson of, among other things, two counts of arson of a dwelling house, Mich. Comp. Laws § 750.72, and one count of arson of personal property worth more than $200 but less than $1,000.00, Mich. Comp. Laws § 750.750.74(1)(b)(i).

In 2010, Robinson was sentenced to "15 to 40 years' imprisonment for each arson of a dwelling house conviction." *Robinson*, 2012 WL 1109049, at *1.

## B.

Robinson appealed. He also sought remand for a hearing on his trial counsel's effectiveness. The Michigan Court of Appeals denied the motion to remand. (PageID.1039.) And

it denied the appeal. *People v. Robinson*, No. 301606, 2012 WL 1109049 (Mich. Ct. App. Apr. 3, 2012).

The Michigan Supreme Court then denied leave to appeal. *People v. Robinson*, 817 N.W.2d 67, 68 (Mich. 2012).

Robinson then sought post-conviction relief. After about three years, the state trial court denied his motion for relief from judgment. (PageID.857–862, *People v. Robinson*, No. 2020-230501 (Mich. 6th Cir. Ct. Feb. 19, 2016); PageID.885–888, *People v. Robinson*, No. 2020-230501 (Mich. 6th Cir. Ct. June 3, 2016).) The Michigan Court of Appeals denied leave to appeal, (PageID.1135, *People v. Robinson*, No. 333339 (Mich. Ct. App. Nov. 9, 2016)), as did the Michigan Supreme Court, *People v. Robinson*, 898 N.W.2d 216 (Mich. 2017).

## C.

Robinson then sought relief in federal court by filing a petition for a writ of habeas corpus. His original petition contained only three claims. (*See* ECF No. 1.) But this Court permitted him to supplement his petition. (ECF No. 12.) In all then, Robinson has six claims for the writ.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

### A.

Robinson claims that MN's identification of him violated his rights under the Due Process Clause. (ECF No. 10, PageID.1354–1355.)

To understand this claim, more facts are necessary. As explained, when MN was first on the stand, she did not identify Robinson as one of the men that committed the arson. When asked about the second person, she testified, "I don't remember his face." (PageID.416.) But after she left the stand, MN recognized Robinson from when she testified at his preliminary examination. Then, outside the presence of the jury, MN retook the stand and explained that a computer monitor had blocked her view of Robinson when she was first on the stand. (PageID.459.) She continued:

> [MN]: When I was leaving out, I seen someone in the blue, and he was walking out toward this way. And, I stopped him [the assistant prosecutor], and I said: wait, isn't that the man that was in the court, the last court date? He [the assistant prosecutor] was like: *oh, yeah*. And then I was like—
>
> THE COURT: who said: oh, yeah?
>
> [MN]: oh, him [the assistant prosecutor]. He said: Yeah. And I was like: oh. so, then I was like: Do you mind if I can go back in there? And he was like: sure, I'll see.

(PageID.461–462 (emphasis added).) Robinson's counsel argued, "Judge, the witness has just told you that she asked the Prosecutor, isn't that the man from the other court, and the Prosecutor

said: Yes. Now, Judge, if that's not telling the witness what to say— . . . ." (PageID.463.) The

judge stated, "[m]aybe I missed that" and proceeded to further question MN:

> THE COURT: Is that—did he tell you: That's the guy? Is that what you're
> saying? or did you say—
>
> [MN]: No, I'm, I'm asking him. I said: Isn't that the guy in the Courtroom? He's
> like: That's the person you seen? I said: Yeah. I didn't—
>
> THE COURT: You said: Yes?
>
> [MN]: Yes. He didn't mean—like, I didn't mean to say that he said, told me to
> say yeah, or he said—
>
> THE COURT: You're saying yes—
>
> [MN]: Yes.
>
> THE COURT: —not him telling you that's the guy?
>
> [MN]: Yes.
>
> THE COURT: You're sure about that?
>
> [MN]: Yes.

(PageID.463–464.) The court permitted MN to resume her testimony before the jury.

(PageID.471.) She identified Robinson as the second person involved in the arson. (PageID.474–

475.)

Robinson claims that MN's identification of him violated his rights under the Due

Process Clause. Robinson points out that the day after the fire, MN could not pick him out from a

photo array. (ECF No. 14, PageID.1425.) And Robinson argues that while MN identified him at

his preliminary examination, he was the only one dressed in prison garb and so his dress

effectively told MN that he was the person implicated in the arson. (ECF No. 10, PageID.1354;

*see also* PageID.186.) Further, Robinson stresses that when the court questioned MN about what

had happened after she left the stand, MN indicated that the prosecutor had confirmed that he

was the person at the preliminary examination (the "oh, yeah" remark). (ECF No. 10,

PageID.1354–1355.) Robinson also points out that when MN was first on the stand, she did not

indicate that a computer screen was blocking her view and testified, "I don't remember his face." (ECF No. 14, PageID.1425.)

While the circumstances surrounding MN's identification of Robinson are concerning, this Court is not the first to be presented with this issue. Robinson raised the issue on direct appeal, and the Michigan Court of Appeals rejected it. It stated in part, "the record shows that the trial court properly questioned [MN] and determined that the assistant prosecutor did not tell her whom to identify. Although [MN] initially made a statement that appeared to suggest that the assistant prosecutor told her that she previously identified [Robinson] at the preliminary examination, the trial court's further questioning showed that this was not truly the case." *Robinson*, 2012 WL 1109049, at *10. The state appellate court continued, "[MN] stated that she independently remembered previously identifying [Robinson], and this is bolstered by the fact that [MN] first approached the assistant prosecutor to ask to retake the stand." *Id.* The Michigan Court of Appeals concluded, "Evaluated under the totality of the circumstances, we hold that the trial court's finding on this issue was not clearly erroneous." *Id.*

Even if the Michigan Court of Appeals did not analyze Robinson's claim under the Due Process Clause, it made factual findings that this Court must accept absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Reading the same trial transcript that is now before this Court, the Michigan Court of Appeals found that the "trial court properly questioned [MN] and determined that the assistant prosecutor did not tell her whom to identify" and that while MN had "initially made a statement that appeared to suggest that the assistant prosecutor told her that she previously identified [Robinson] at the preliminary examination, the trial court's further questioning showed that this was not truly the case." *Robinson*, 2012 WL 1109049, at *10. Robinson offers a different reading of the transcript, but that is not "clear and

convincing evidence" that the Michigan Court of Appeals' reading of the transcript was wrong. *See* 28 U.S.C. § 2254(e)(1). So this Court must accept that MN ultimately stated that the prosecutor did not confirm that Robinson was the person she had seen at the preliminary exam.

And if the prosecutor did not confirm to MN that Robinson was the person implicated in the arson, then, as the Michigan Court of Appeals found, MN "independently remembered previously identifying [Robinson]." 2012 WL 1109049, at *10. So accepting the facts as the Michigan Court of Appeals found them, as this Court must, this Court cannot find any violation of the Due Process Clause.

**B.**

 Robinson next claims that his trial counsel was constitutionally ineffective for failing to adequately investigate an alibi defense and interview alibi witnesses. (ECF No. 1, PageID.17–21, 31–39.)

Before looking at the merits of this claim, the Court must iron out a wrinkle related to the standard of review. Namely, when two state courts have adjudicated the merits of a petitioner's claim, which state court order should a federal habeas court examine when applying § 2254(d)?

To appreciate the wrinkle, some background on how federal courts are to apply § 2254(d) is useful. When a state court denies a claim "on the merits" in a one-line, unexplained order (and there is no lower court opinion providing reasoning that might have been adopted via the one-line order), a federal habeas court is to hypothesize "arguments or theories" that "could have supported" the one-line rejection of the claim, and then ask if any of those arguments or theories comports with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). But when a state court provides reasoning in denying a claim, a federal habeas corpus court asks only whether the particular reasoning set out in the state court opinion comports with Supreme Court

precedent. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192, (2018). And that method of applying § 2254(d) extends a bit further too: where a state appellate court denies a claim on the merits in a one-line, unexplained order—and there is a lower court that provided reasoning—a federal habeas court is to presume that the state appellate court's one-line order adopts the reasoning of the lower state court; the federal habeas court is then to ask whether that particular reasoning comports with Supreme Court Precedent. *See id.*

Upon reviewing Robinson's two treks through the state courts, a case for the *Harrington* approach could be made as well as a case for the *Wilson* approach.

Consider first the direct-appeal trek. On direct appeal, Robinson's appellate counsel filed a motion to remand in the Michigan Court of Appeals. (PageID.978.) The motion asserted that Robinson's "trial attorney failed to investigate a possible defense. [Robinson] claims that he was at home . . . approximately 8.5 miles from the scene of the arson . . . at 7:00 p.m. on November 3, 2009, when the arson allegedly occurred." (PageID.979.) Attached to the motion were affidavits from Pamela Bomar, who had three children with Robinson, and from Robinson. Bomar's affidavit stated that she was with Robinson at his house from 10 a.m. until midnight on November 3, 2009, that she left numerous messages with trial counsel's secretary, that she indicated to the secretary that she had important information about the case, and that trial counsel never returned her calls. (PageID.983.) Robinson's affidavit added that he was at his home with Bomar at the time of the arson, that he made or received phone calls around the time of the arson, and that he told his trial counsel that cell-tower data might show he was not present at the scene of the arson, and that, as far as Robinson knew, counsel never obtained the data. (PageID.985–986.)

Had there not been further proceedings, the Michigan Court of Appeals' denial of the motion to remand would trigger the *Harrington* approach of applying § 2254(d). For one, the state appellate court denied Robinson's motion for remand in a single line: "the motion to remand . . . is DENIED for failure to persuade the Court of the necessity of a remand at this time." (PageID.1039.) For two, the Sixth Circuit has held that this language counts as an "on the merits" adjudication of the claims as that phrase is used in § 2254(d). *Hendrix v. Palmer*, 893 F.3d 906, 918 (6th Cir. 2018); *Nali v. Phillips*, 681 F.3d 837, 851–52 (6th Cir. 2012). For three, there was no lower court reasoning that the Michigan Court of Appeals could have adopted (the motion for remand was the first time Robinson raised this claim about his trial counsel).

But things were not left there; Robinson took a second trek through the state courts and again raised his trial-counsel claim. After his direct appeal, Robinson returned to the state trial court and filed a motion for relief from judgment. And in that motion, he presented a "beefed up" version of his ineffective-assistance-of-trial-counsel claim. In addition to the two affidavits he had presented to the Michigan Court of Appeals, Robinson included two more. One affidavit was from Larry Blackshere; Blackshere averred that he was with Robison and Bomar at Robinson's house at the time of the arson, that he called Robinson's trial counsel several times but kept getting voicemail, that he left messages but counsel did not call him back, that he left a message with counsel's secretary and was told that she would "give the information" to counsel. (PageID.779–780.) The other affidavit was from Denise Robinson-Wilson, Robinson's sister; Robinson-Wilson averred that she had hired Robinson's trial counsel, that she had spoken with him "a dozen times" about getting in touch with "alibi witnesses [Bomar] and [Blackshere]," that she had asked counsel to obtain cell-tower data, and that counsel kept saying "I'll take care of this," "trust me," and that he would contact the alibi witnesses. (PageID.781.)

11

Although the Michigan Court of Appeals had already addressed this claim during Robinson's first trek through the state courts, it appears that the state trial court again adjudicated that claim "on the merits" as that phrase is used in § 2254(d). (PageID.857–862, *People v. Robinson*, No. 2010-230501 (Mich. 6th. Cir. Ct. Feb. 19, 2016) (first order on motion for relief from judgment).) To be sure, the state trial court set out the legal standard for a state procedural bar—namely the bar on raising issues via a motion for relief from judgment that could have been raised on direct appeal. (PageID.858.) Under that state procedural rule, "good cause" and "prejudice" might allow a defendant to clear the bar. And the state trial court noted that ineffective assistance of counsel could be "good cause." (PageID.858.) Up to that point in the order, it seems that the state trial court was applying a procedural bar rather than addressing the claim "on the merits." But then things seemed to take a turn. For ineffective assistance to be good cause for failing to raise a claim on *appeal*, it would have to be *appellate* counsel who was ineffective. But as shown above, appellate counsel did, via the motion to remand, raise the claim that trial counsel was ineffective for not investigating alibi witnesses. Moreover, after reciting the procedural rule, the state trial court went on to analyze the trial-counsel claim by directly applying the ineffective-assistance standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). (*See* PageID.91 (citing *People v. Carbin*, 623 N.W.2d 884, 889 (Mich. 2001), which, in turn, recites *Strickland*).) And in the end, the state trial court found no prejudice under *Strickland*. (*See* PageID.92 (citing *Carbin* again).)

Given that the state trial addressed—or, more precisely, again addressed—Robinson's claim that his trial counsel did not adequately investigate an alibi defense "on the merits," perhaps the *Wilson* approach applies. The state trial court offered reasoning. And after the state trial court denied the claim, the Michigan Court of Appeals and the Michigan Supreme Court

12

denied leave to appeal in one-line orders. (PageID.1135, *People v. Robinson*, No. 333339 (Mich. Ct. App. Nov. 9, 2016)); *People v. Robinson*, 898 N.W.2d 216 (Mich. 2017). So the state trial court provided the last reasoned opinion on Robinson's claim and perhaps it is that reasoning that must comport with Supreme Court precedent. *See Wilson*, 138 S. Ct. 1188, 1192 (providing that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion," "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.")

This Court is not aware of any binding precedent specifically addressing how § 2254(d) applies when (1) a state appellate court adjudicates a claim "on the merits" but provides no reasoning and then, later, (2) a state trial court adjudicates the same claim "on the merits" but provides reasoning (and the appellate courts then deny leave to appeal that decision without reasoning). *Cf. Taylor v. Simpson*, No. 14-6508, 2020 WL 5015459, at *12–15 (6th Cir. Aug. 25, 2020) (applying *Harrington*'s hypothetical-reasons approach when state supreme court first addressed a claim on the merits without explanation, and then, in a subsequent appeal, the state supreme court provided an explanation for the earlier denial, but the explanation was dicta). In this case, the Court will examine the state trial court's reasoning under § 2254(d). The state trial court was the last court to both decide the trial-counsel claim and provide reasoning for its decision. *Cf. Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the *last* related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." (emphasis added)). Further, applying § 2254(d) to the state trial court opinion benefits Robinson, because it is the particular reasoning provided by that court that must comport with Supreme Court precedent (as opposed to any and all reasons that this Court might conjure up under

*Harrington*). And benefitting Robinson is a fair thing to do in this case, as, ultimately, the Court finds he does not prevail on his trial-counsel claim.

So what exactly did the state trial court say? It first stated that Robison "did not present on appeal the issues raised in his motion for relief from judgment." (PageID.858.) But that factual finding is wrong; Robinson's motion to remand claimed that his trial counsel was ineffective for failing to investigate an alibi defense. Then, getting to the merits of Robinson's claim, the state trial court stated, "Defendant presents no evidence that he asked counsel to raise this issue." (PageID.860.) But that too seems wrong. For one, Robinson's affidavit (which is evidence) stated that he asked his counsel to obtain cell tower data in hopes that it would show he was not at the scene of the arson. And while not Robinson personally, his sister's affidavit states, "I spoke with [trial counsel] a dozen time[s] about getting in touch with [Robinson's] alibi witness pamela bomar . . . and . . . larry blacksh[ere] who was with my brother during the time of the allege[d] incident." (PageID.781.) So to say that Robinson presented "no evidence" about asking his trial counsel to pursue an alibi defense, is wrong. Then the state trial court stated, "Even if trial counsel was made aware of Defendant's alibi and refused to raise it, the State offered eye-witness testimony that Defendant started the fire and presented circumstantial evidence linking Defendant to the fire. Because Defendant cannot show that there is a *reasonable probability* that the evidence would undermine confidence in the outcome of the trial, he has failed to demonstrate prejudice." (PageID.92 (emphasis added).) This finding is also a bit of a stretch. The only eyewitness who could identify Robinson for the jury was (1) a child, (2) who at first could not identify him, (3) who stated that she did not remember his face, and only after an odd series of events outside the courtroom, (4) retook the stand and identified Robinson. And the circumstantial evidence of Robinson's involvement, while probative, was not

14

overwhelming. Also *Strickland*'s "reasonable probability" bar does not require a defendant to show that absent counsel's errors, the trial *would have been* different, *see Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); Robinson only had to show that there was a "reasonable probability," i.e., a fair chance that with Bomar's and Blackshere's testimony, and with the cell-tower data, a jury would have found that he was not at the scene of the arson.

But even assuming that Robinson could clear § 2254(d) as applied to the state trial court's reasoning, this Court would not grant a writ based on trial counsel's failure to investigate the alibi defense. That is because it appears that trial counsel did investigate that defense to a point, and then made a reasonable, strategic decision to not pursue it further. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." (emphasis added)). In particular, Michigan law requires defendants to file notice of an alibi defense. Records from the trial court indicate that Robinson's counsel did this. (PageID.1038.) The notice stated, "At the time of the charged arson the Defendant was visiting his children at the home of his former girlfriend Pamela [Bomar]." (*Id.*) Moreover, trial counsel included Bomar on his witness list. (PageID.1037.) So it appears that at one point, trial counsel intended to put on an alibi defense with Bomar's testimony at its center. A letter from Robinson's appellate counsel to Robinson suggests why this never happened: "I cannot develop any issue about ineffective assistance of counsel unless the Court of Appeals remands the case for that purpose. I do not think that this is a strong issue because [your trial counsel] will say that he could not get Pamela Bomar to cooperate because she was afraid that her parole would be revoked for associating with you." (PageID.785.) Taking all of this together, along with the fact that Robinson has not explained why Bomar was not ultimately called, the proper inference is that counsel made a reasonable,

strategic decision to abandon an alibi defense and instead focus on attacking the credibility of two child witnesses. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

Because Robinson has not shown that trial counsel's decision to not further develop or present an alibi defense was unreasonable, he has not shown that trial counsel's performance was below the constitutional floor. So a writ will not issue on this claim.

## C.

Robinson also says his appellate counsel was constitutionally ineffective. According to Robinson, his appellate counsel was ineffective for failing to assert that his trial counsel was ineffective for failing to claim that there was insufficient evidence to convict. (ECF No. 1, PageID.24, 40, 43–44.)

Robinson first raised this claim in his motion for relief from judgment, and the state trial court's opinion addressing that claim is again difficult to follow. In fact, the state trial court might have misconstrued Robinson's claim. Although Robinson's motion for relief from judgment is not perfectly clear, he did assert that his appellate counsel was ineffective for not claiming that *his trial counsel was ineffective* for not raising an insufficient evidence claim. (PageID.796, 803–804.) But at one point in its opinion, the state trial court stated, "Defendant argues that his appellate counsel was ineffective because *he* failed to raise a claim of insufficient evidence based upon [MN's allegedly-erroneous identification]." (PageID.861–862 (emphasis

16

added).) But Robinson argued that trial—not appellate—counsel should have raised the sufficiency of evidence issue. (PageID.796, 804.)

In any event, Robinson is not entitled to relief. At the close of the prosecution's proofs, Robinson's trial counsel did seek a directed verdict. (PageID.613–617.) So there was no reason for appellate counsel to fault trial counsel for not raising an insufficient evidence claim; trial counsel effectively raised the claim.

True, trial counsel did appear to argue that there was insufficient evidence only because MN's identification should have been excluded; effectively, counsel wanted the trial court to revisit its decision to let MN retake the stand and identify Robinson. (*See* PageID.616.) In other words, it does not appear that trial counsel argued that even with MN's identification, there was insufficient evidence. (*See id.*)

But if that is Robinson's gripe, there is little reason for appellate counsel to have raised it. Whether to believe MN or not was squarely in the province of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (providing that on an insufficiency-of-evidence claim, "we do not . . . re-evaluate the credibility of witnesses[] or substitute our judgment for that of the jury"). So if trial counsel had attempted to argue that the evidence, including MN's identification, was not sufficient to convict Robinson, that argument would have in all likelihood been rejected. *See id.* (providing that on an insufficiency-of-evidence claim, all facts are construed in favor of the prosecution and the question is whether *any* rational juror would have voted to convict); *Brown v. Davis*, 752 F. 2d 1142, 1144 (6th Cir. 1985) (indicating that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction."). So there was good reason for trial counsel to not have made that argument. And it follows that there was good reason for appellate counsel to not have faulted trial counsel for not

making that argument. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

A writ will not issue on account of appellate counsel's effectiveness.

### D.

Robinson next claims that his rights under the Due Process Clause were violated when a fire inspector, Arthur Schrah, was allowed to testify that in his opinion, Robinson was one of the arsonists. (PageID.1355–1356.) Here is the relevant testimony from Schrah's cross examination:

> [ROBINSON'S COUNSEL:] You don't know who set this fire, do you?
>
> A Based on—based on my experience? And based on this examination?
>
> Q The question is yes or no; do you know who set this fire?
>
> A *I believe that the Defendants set the fire*.
>
> Q No, no. I didn't ask you what you believe. Of your own personal knowledge, do you know who set this fire, yes or no?
>
> A *Yes, I do*. But—
>
> Q So you were there when the fire was set, right?
>
> A No.
>
> Q All right. As a matter of fact, you saw the person when they put the gasoline on the roof of the car and light it with a match, right?
>
> A No.
>
> Q So of your own personal knowledge, you don't know who set the fire, do you? You weren't there, were you?
>
> A Not when the fire—
>
> Q Excuse me. You weren't there, yes or no?
>
> A No.

(PageID.599–600 (emphases added).) Robinson thinks that Schrah impermissibly placed the prestige of the fire-inspector's and prosecution's office behind his opinion that he and Idriss were the arsonists. (PageID.1355.) And Robinson thinks that Schrah's testimony invaded the province of the jury. (PageID.1356.) All of that adds up to a due process violation, in Robinson's view.

The Michigan Court of Appeals addressed this claim. It first reasoned that the claim was "waived" because Robinson's counsel invited Schrah's response: "Although defense counsel did ask for a 'yes' or 'no' answer, Schrah's answer seems a common sense response to the question asked, and defense counsel should have foreseen that the answer may be coming based on Schrah's previous question. . . . Because this error occurred due to defense counsel's failure to consider and respond to Schrah's question, and because defense counsel could have avoided the issue by asking a more direct and artful question, we hold that defense counsel invited this error." 2012 WL 1109049, at *11. The state appellate court went further, though. It added that Robinson was not significantly prejudiced by the testimony: "Our review of the record leads us to conclude that defense counsel elicited testimony that Schrah did not personally see [Robinson] start the fire. The jury, therefore, knew that the testimony amounted only to Schrah's opinion, and the trial court instructed the jury that it remained the ultimate fact-finder. Additionally, the State presented eye-witness testimony that [Robinson] started the fire, and presented circumstantial evidence linking Dorian to the fire." *Id.*

The Michigan Court of Appeals' prejudice determination was an "on the merits" adjudication of Robinson's claim under the Due Process Clause. *See* 28 U.S.C. § 2254(d). True, the Michigan Court of Appeals did not mention the Due Process Clause. But the state appellate court showed that it recognized the problem when it recited the following points of law: "it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury" and "a witness may not convey an opinion regarding the defendant's guilt or innocence." 2012 WL 1109049, at *11. The Michigan Court of Appeals' prejudice analysis is also similar to the analysis a federal habeas court undertakes in addressing a claim under the Due Process Clause. *See Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) ("Whether

the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor."). Finally, while the state appellate court analyzed prejudice under plain-error review, 2012 WL 1109049, at *5, that does not change the "on the merits" status of its ruling, *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Because the Michigan Court of Appeals adjudicated the merits of Robinson's due process claim, Robinson must show that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of," a holding of the Supreme Court. 28 U.S.C. § 2254(d). While the Sixth Circuit Court of Appeals has found that testimony similar to Schrah's infringed a defendant's rights under the Due Process Clause, *see Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988), Robinson has not cited any Supreme Court case holding that an expert's opinion that a defendant was the person responsible violates the Due Process Clause, *see Parker v. Matthews*, 567 U.S. 37, 48 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))).

And even if Robinson had a Supreme Court case on his side, this Court cannot say that the Michigan Court of Appeals' factual determinations were unreasonable, *see* 28 U.S.C. § 2254(d), or are rebutted by any clear or convincing evidence, 28 U.S.C. § 2254(e)(1). In particular, Robinson has not provided the Court with a basis to revisit the Michigan Court of Appeals' findings that "defense counsel elicited testimony that Schrah did not personally see [Robinson] start the fire" and that "[t]he jury . . . knew that the testimony amounted only to Schrah's opinion." And accepting those factual findings means that Schrah's testimony did not deprive Robinson of a fundamentally fair trial. *See Ege*, 485 F.3d at 375.

Robinson's claim about Schrah's testimony does not warrant a writ.

**E.**

As another basis for a writ of habeas corpus, Robinson argues that during sentencing, the trial court found facts that needed to be found by the jury. (ECF No. 1, PageID.53.)

Whether based on the Sixth Amendment directly, the U.S. Supreme Court's interpretation of the Sixth Amendment in *Alleyne v. United States*, 570 U.S. 99 (2013), or the Michigan Supreme Court's interpretation of *Alleyne* in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), this Court cannot grant Robinson a writ on this claim. Even though "*Alleyne* clearly established the unconstitutionality of Michigan's mandatory sentencing regime," *Robinson v. Woods*, 901 F.3d 710, 714 (6th Cir. 2018), *Alleyne*'s holding does not apply to Robinson's sentence. Robinson was sentenced in 2010 (PageID.751), and his direct appeal concluded in July 2012, *see People v. Robinson*, 817 N.W.2d 67, 68 (Mich. 2012). Yet *Alleyne* was not decided until almost a year later, in June 2013. And *Alleyne* has not been made retroactive on collateral review. *Currie v. Campbell*, No. 19-1411, 2019 WL 5173780, at *3 (6th Cir. July 10, 2019) (citing *United States v. Charles*, 901 F.3d 702, 705 (6th Cir. 2018)). As for *Lockridge*, its holding is not only state law, the case was decided well after Robinson's direct appeal was over and the decision is also not retroactive. *People v. Barnes*, 917 N.W.2d 577, 584 (Mich. 2018). As for the Sixth Amendment, the law at the time of Robinson's sentencing and direct appeal was that a judge could find facts that increased the minimum (as opposed to the maximum) sentence. *See Harris v. United States*, 536 U.S. 545 (2002). And, under Michigan's indeterminate sentencing scheme, judges only set the minimum sentence.

Apart from the Sixth Amendment issue, Robinson may also be arguing that the judge simply erred in finding the facts. (*See* ECF No. 1, PageID.57.) He asserts that Offense Variable 2 should have only contributed 15 points to his overall offense-variable score if he possessed or

used a harmful biological, chemical, or radioactive device. (*See* ECF No. 1, PageID.53.) And Robinson is correct that it appears that his counsel or the judge or both confused OV2 as relating to the number of victims. (*See* PageID.755–757.) Robinson says that OV9, not OV2, relates to the number of victims, and he was already given 10 points for OV9. (ECF No. 1, PageID.57.) So, Robinson says, OV2 was mistakenly scored at 15 points.

The Court will not grant a writ on this issue. It is unclear why counsel and the judge were discussing the number of victims in relation to OV2; it may be that they were intending to discuss OV9. But even if there was error, Robinson has not shown it is of the variety that warrants a writ. Generally, "[a] claim that the trial court improperly calculated the petitioner's sentence under state law is not cognizable in federal habeas proceedings." *Sweet v. Howes*, No. 16-2247, 2017 WL 2385274, at *2 (6th Cir. June 1, 2017). There is an exception when "the scoring of the offense variables was so unfair as to violate his due process rights or that the trial court relied on inaccurate information during sentencing." *Gunn v. Burton*, No. 19-1077, 2019 WL 7602327, at *3 (6th Cir. July 30, 2019). But that is not the case here. The trial court scored *OV1* upon finding that a victim was subjected or exposed to an "incendiary device," which includes "gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device." (PageID.753–755); Mich. Comp. Laws Ann. § 777.31(3)(b). OV2, the variable that Robinson believes was mis-scored, permits 15 points if "[t]he offender possessed or used an incendiary device." Mich. Comp. Laws Ann. § 777.32(1)(b). So the trial court's factual finding as to OV1—which Robinson does not challenge—largely applies to OV2 as well. Moreover, there was testimony suggesting that Robinson doused the car using a soda bottle filled with flammable liquid. (PageID.417–418, 428–430, 450, 453, 513.) As such, "the scoring of the

offense variables was [not] so unfair as to violate [Robinson's] due process rights." *Gunn*, 2019 WL 7602327, at *3.

### F.

Robinson also argues that the admission of Deputy Mark VanLacken's testimony violated the Due Process Clause. (ECF No. 10, PageID.1352–53.)

This claim for the writ is without merit. Although the prosecution intended to call VanLacken at trial, he ultimately did not testify (he was having surgery). (PageID.605–606.) And while there was some argument over reading VanLacken's preliminary-examination testimony to the jury (PageID.607–611), the prosecution ultimately decided to rest its case without having that testimony read into the record (*see* PageID.612).

### IV.

In sum, Robinson's claims for a writ of habeas corpus are barred by § 2254(d) or § 2254(e)(1) or they otherwise lack merit. Robinson's petition for the writ is therefore DENIED.

Further, the Court believes that no reasonable jurist would debate whether Robinson should be granted habeas corpus relief on any of his claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, the Court DENIES Robinson a certificate of appealability.

If Robinson chooses to appeal the Court's decision, he may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: September 8, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 8, 2020.

s/Erica Karhoff
Case Manager to the
Honorable Laurie J. Michelson